COOLEY LLP
WILLIAM K. PAO (252637)
wpao@cooley.com
ALEXANDRA R. MAYHUGH (300446)
amayhugh@cooley.com
ALEXANDER G. GALICKI (308737)
agalicki@cooley.com
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071
Telephone:    +1 213 561 3250
Facsimile:    +1 213 561 3244

COOLEY LLP
JEFFREY M. GUTKIN (216083)
jgutkin@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant
BLOCK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID TUCKER, and LUCILLE MORAGNE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BLOCK, INC. and CASH APP INVESTING, LLC,<br><br>Defendant. | Case No. 3:25-cv-00370-MMC<br><br>**DEFENDANT BLOCK, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:        June 27, 2025<br>Time:        9:00 a.m.<br>Dept:        Courtroom 7, 19th Fl.<br>Judge:      Maxine M. Chesney |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II. ARGUMENT ......................................................................................................... 2

    A. Plaintiffs Lack Standing to Assert Claims Against Block. ............................... 2

    B. Plaintiffs Cannot Base Their Claims on Violations of the BSA and CMTA. .................. 6

    C. Plaintiffs' Complaint Violates Rule 8. ........................................................... 10

    D. Plaintiffs' UCL Claim Fails. ......................................................................... 11

    E. Plaintiffs' Negligence Claim Fails. ............................................................... 13

    F. Plaintiffs' Unjust Enrichment Claim Fails. .................................................... 14

III. CONCLUSION ...................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Agape Litig.*,
5
    681 F. Supp. 2d 352 (E.D.N.Y. 2010) ...................................................................... 7

6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 3

7

*Astiana v. Hain Celestial Group, Inc.*,
8
    783 F.3d 753 (9th Cir. 2015) ............................................................................... 15

9

*Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*,
    2021 WL 6104014 (C.D. Cal. Aug. 13, 2021) ................................................... 7, 9
10

11

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
    674 F. Supp. 3d 884 (S.D. Cal. 2023) .................................................................. 9

12

*Barber v. Chang*,
13
    151 Cal. App. 4th 1456 (2007) ........................................................................... 5

14

*Barbizon School of S.F., Inc. v. Sentinel Ins. Co.*,
    2021 WL 5758890 (N.D. Cal. Dec. 3, 2021) ...................................................... 3
15

16

*Bibicheff v. PayPal, Inc.*,
    844 F. App'x 394 (2d Cir. 2021) .................................................................. 11, 12

17

*BMA LLC v. HDR Glob. Trading Ltd.*,
18
    2021 WL 949371 (N.D. Cal. Mar. 12, 2021) .................................................. 2, 6

19

*California Restaurant Association v. City of Berkeley*,
    89 F.4th 1094 (9th Cir. 2024) ............................................................................. 5
20

21

*Casa Nido P'ship v. Kwon*,
    2024 WL 5173259 (N.D. Cal. Dec. 18, 2024) ................................................... 10

22

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
23
    2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ...................................................... 13

24

*Farmers Ins. Exch. v. Super. Ct.*,
    137 Cal. App. 4th 842 (2006) ............................................................................. 8
25

26

*Freedom Gold USA LLC v. Bank of Am., N.A.*,
    766 F. Supp. 3d 968 (C.D. Cal. Jan. 24, 2025) .................................................. 7

27

*Greenstein v. Noblr Reciprocal Exch.*,
28
    585 F. Supp. 3d 1220 (N.D. Cal. 2022) ............................................................. 6

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

**BLOCK'S REPLY ISO MOT. TO DISMISS**
**CASE NO. 3:25-CV-00370-MMC**

*Hall v. Time Inc.*,
    158 Cal. App. 4th 847 (2008), *as modified* (Jan. 28, 2008) ........................................ 5

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
    2021 WL 4306018 (N.D. Cal. Sept. 22, 2021) ....................................................... 15

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999)............................................................................... 14

*Homsy v. Bank of Am., N.A.*,
    2013 WL 2422781 (N.D. Cal. June 3, 2013) .......................................................... 11

*Jeong v. Nexo Capital Inc.*,
    2022 WL 3590329 (N.D. Cal. Aug. 22, 2022)........................................................... 8

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)................................................................................... 4

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012) ............................................................................. 15

*LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.*,
    2008 WL 410243 (N.D. Cal. Feb. 12, 2008) ............................................................ 4

*Marlin v. Moody Nat'l Bank*,
    2006 WL 2382325 (S.D. Tex. Aug. 16, 2006).......................................................... 7

*Martin v. Sephora USA, Inc.*,
    2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ....................................................... 11

*Mayron v. Google LLC*,
    54 Cal. App. 5th 566 (2020) ................................................................................. 11

*McCann v. Lucky Money, Inc.*,
    129 Cal. App. 4th 1382 (2005) ............................................................................... 7

*Meisner v. JPMorgan Chase Bank, N.A.*,
    2022 WL 837230 (E.D. Cal. Mar. 21, 2022) ......................................................... 13

*Mendia v. Garcia*,
    165 F. Supp. 3d 861 (N.D. Cal. 2016) ..................................................................... 4

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
    696 F.3d 849 (9th Cir. 2012)................................................................................... 3

*Newton v. Am. Debt Servs., Inc.*,
    75 F. Supp. 3d 1048 (N.D. Cal. 2014) ..................................................................... 7

*O'Donnell v. Bank of Am., Nat'l Ass'n*,
    504 F. App'x 566 (9th Cir. 2013) ............................................................................ 8

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

iii

BLOCK'S REPLY ISO MOT. TO DISMISS
CASE NO. 3:25-CV-00370-MMC

*O'Handley v. Weber*,
   62 F.4th 1145 (9th Cir. 2023) ................................................................................. 5

*Pub. Serv. Co. of Oklahoma v. A Plus, Inc.*,
   2011 WL 3329181 (W.D. Okla. Aug. 2, 2011) ......................................................... 7

*Republican Nat'l Comm. v. Google LLC*,
   742 F. Supp. 3d 1099 (E.D. Cal. 2024) ................................................................... 12

*Robinson Helicopter Co. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) ............................................................................................ 13

*S&S Worldwide, Inc. v. Wells Fargo Bank*,
   509 F. Supp. 3d 1154 (N.D. Cal. 2020) .................................................................... 7

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .................................................................................. 5

*Sepanossian v. Nat'l Ready Mix Co.*,
   97 Cal. App. 5th 192 (2023) .................................................................................... 15

*Sheen v. Wells Fargo Bank, N.A.*,
   12 Cal. 5th 905 (2022) ............................................................................................ 13

*Silver v. Stripe Inc.*,
   2021 WL 3191752 (N.D. Cal. July 28, 2021) ........................................................... 8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) ..................................................................... 14

*Tristan v. Bank of Am.*,
   2023 WL 4417271 (C.D. Cal. June 28, 2023), *appeal dismissed sub nom.* 2025
   WL 1293081 (9th Cir. Jan. 21, 2025) ................................................................. 5, 10

*Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*,
   2019 WL 3503109 (N.D. Cal. Aug. 1, 2019) .......................................................... 7, 9

*Whiteside v. E*TRADE Sec., LLC*,
   2021 WL 930794 (N.D. Cal. Mar. 11, 2021) ........................................................... 14

*Zeichner v. Nord Sec. Inc.*,
   2024 WL 4951261 (N.D. Cal. Dec. 2, 2024) ........................................................... 15

**Statutes**

12 U.S.C. § 1958 ............................................................................................................. 6

15 U.S.C. § 45(b) ............................................................................................................. 8

31 U.S.C. § 5311 ............................................................................................................. 9

Cal. Civ. Code § 1798.199.90(a) ......................................................................... 8

Cal. Fin. Code § 2102(b) ................................................................................... 8

Cal. Fin. Code § 2120 ....................................................................................... 6

**Other Authorities**

12 C.F.R. § 163.180(d)(12)(i) ............................................................................. 6

31 C.F.R. § 1022.320 ...................................................................................... 10

Fed. R. Civ. P. 8 ............................................................................................ 10

FinCEN, *Unauthorized Disclosure of Suspicious Activity Reports* (Aug. 18, 2004)...................... 7

S. Hrg. 108-886, *Bank Secrecy Act Enforcement: Hearing on efforts to ensure compliance and enforcement of the bank secrecy act before the S. Comm. on Banking, Housing and Urban Affairs*, 108 Cong. 84 (2004) .................................... 8

USA Patriot Act, PL 107-56, 115 Stat 272 (2001) ........................................................ 9

1

## I.    INTRODUCTION

2          At bottom, Plaintiffs' theory of liability is, because Block has faced unrelated whistleblower

3    complaints over certain alleged compliance issues, it should be held responsible for Plaintiffs'

4    losses in a scam ***wholly disconnected*** from those issues and should also be liable to potentially

5    millions of class claimants. Plaintiffs' logic, based on nothing but conclusory pronouncements, is

6    that any supposed compliance deficiency must have facilitated the scam alleged here. That is

7    nowhere near enough. To proceed past the pleadings, Plaintiffs must allege ***facts*** showing how a

8    specific compliance failure caused ***Plaintiffs*** to lose money to third-party fraudsters on the Cash

9    App platform. They do not. They have no plausible allegations that more robust know-your-

10    customer (KYC) or anti-money laundering (AML) procedures would have identified these

11    scammers or prevented this alleged fraud. Plaintiffs cannot allege solely that Block's practices have

12    been challenged, when those challenges have nothing to do with the facts at hand.

13          Unable to trace their injuries to conduct by Block, Plaintiffs dress up their claims in a

14    regulatory compliance framework—citing the Bank Secrecy Act (BSA) and California's Money

15    Transmission Act (CMTA). But enforcement of these laws is reserved for the government agencies

16    that oversee them. They create no private rights of action, much less give rise to potentially limitless

17    civil liability for the acts of third-party fraudsters. Courts are unanimous: the BSA is a government-

18    facing statute focused on recordkeeping and reporting to aid law enforcement, not a vehicle for

19    consumer recovery. Plaintiffs' effort to transform the BSA and its state analogues into consumer

20    protection statutes would invade the province of regulators charged with enforcing this regime,

21    upend decades of precedent, and impose sweeping liability untethered to any statutory text or

22    legislative intent. Plaintiffs' claims are also at loggerheads with settled law rejecting the assertion

23    that financial institutions are duty-bound to monitor customer transactions for fraudulent activity.

24          The Court should dismiss the Complaint for several reasons. First, Plaintiffs lack standing

25    because they have not plausibly alleged that any conduct by Block—not to mention any specific

26    compliance failure—caused their loss. Second, the BSA and CMTA cannot serve as the basis for

27    Plaintiffs' claims because neither statute confers a private right of action. Third, the Complaint fails

28    to meet basic pleading requirements under Rule 8, relying on vague allegations and irrelevant

materials, and the Opposition relies heavily on improperly introduced documents not mentioned in the Complaint. Finally, Plaintiffs' remaining claims fail independently under well-established law.

## II.    ARGUMENT

### A.    Plaintiffs Lack Standing to Assert Claims Against Block.

Plaintiffs cannot establish Article III standing because they have not shown how their injuries are "fairly traceable" to Block's conduct—and not the result of the "independent action of some third party not before the court." *BMA LLC v. HDR Glob. Trading Ltd.*, 2021 WL 949371, at *9 (N.D. Cal. Mar. 12, 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs clearly and repeatedly assert that they were scammed by third-party fraudsters—not Block. Indeed, they allege the elaborate nature of UPI's scam, the UPI advertising they encountered on social media, the positive feedback from UPI participants on social media, the explanatory video they watched on YouTube, and having reviewed UPI's registration with the Australian Securities & Investments Commission. Compl. ¶¶ 46-49; *see* Mot. 9. Thus, while pleading that UPI's alleged deception happened entirely ***outside of Cash App***, Plaintiffs argue that Block should be liable based on general allegations of unrelated compliance failures and what they characterize as "detailed allegations" of Block's missteps. Opp. 9. This does not withstand scrutiny.

***First***, Plaintiffs argue that general allegations should suffice, asserting that "Block's failure to comply with financial laws caused [Plaintiffs'] injuries." Opp. 9. But Plaintiffs cannot satisfy Article III standing by simply pointing to general alleged compliance failures that Plaintiffs never connect in any manner to the alleged fraud that harmed them. *See BMA*, 2021 WL 949371, at *6 (dismissing claims where plaintiffs "fail[ed] to explain how defendants' purported 'bad acts' elsewhere serve[d] as a basis for believing that defendants committed the [harm] alleged in this case"). That approach would allow any person allegedly scammed by a third party to bootstrap a lawsuit to generic compliance concerns, necessitating costly court proceedings and discovery with no plausible basis in reality. Standing requires more. *Id*. Indeed, allowing a suit like this to proceed would, in effect, impose an impossible strict liability standard on companies requiring them to find ***every*** potential fraudster on their platform—putting to the side the policy implications for financial institutions (many of which would face crushing litigation costs). The law is clear. For a plaintiff

to have standing, they cannot allege imperfect platform controls in the abstract and call it a day. To state a claim, a plaintiff must plausibly allege facts supporting a causal link between a specific compliance failure and their harm. *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) ("links" in "causal chain" must not be "hypothetical or tenuous" and must "remain plausible") (citation modified).

The Complaint lacks that necessary link. Plaintiffs never allege any facts about the individuals to whom they sent money—neither of whom have an obvious connection to any third-party entity or organization, much less "UPI" (Mot. 7 & n.8)—that should have triggered KYC protocols. Nor do they identify any transaction-related red flag that AML protocols should have caught. Without these foundational allegations, there is no basis for standing. Their claims that better customer verification checks could have prevented "fake scam profiles," or that suspicious activity reports might have prevented the fraud (Opp. 9), are purely conclusory and speculative, unsupported by any facts sufficient to create a plausible inference they are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs never explain how different compliance would have stopped the scheme at issue. Mot. 9-12. Though Plaintiffs cite unrelated whistleblower allegations that Block permitted sanctioned entities and offshore gambling sites to operate on its platform, those are irrelevancies. UPI's alleged affiliates using Cash App fall into neither of those categories. *Id.* 10. Plaintiffs also reference FinCEN guidance on pig-butchering scams and "especially relevant" red flags but fail to identify even one that applied to UPI's alleged agents or the disputed transactions. *Id.* 10–11. Plaintiffs' failure to respond to these points in their Opposition confirms the weakness of their position and waives any purported rebuttal. *See Barbizon School of S.F., Inc. v. Sentinel Ins. Co.*, 2021 WL 5758890, at *10 (N.D. Cal. Dec. 3, 2021).[1]

***Second***, Plaintiffs' fallback argument—the conclusory assertion that the Complaint

---

[1] Plaintiffs also argue "financial harm through overpayment, as they would not have used the Cash App platform had they known about these legal violations." Opp. 9. This allegation fails for the same reason—it is too generic and too vague to plead standing. It also purports to rely on certain of Block's disclosures allegedly supporting the idea that users should be able to transact on Cash App without any risk. Compl. ¶¶ 44-45. But this ignores Block's other disclosures that expressly ***highlight*** the risk of fraudulent transactions. Mot. 4-5, 12. Plaintiffs do not contend with this inconsistency in their Opposition. Nor do they reconcile this allegation with their ongoing use of the platform, which continued through the filing of the Complaint.

includes some "detailed allegations" (Opp. 9)—also fails. Those allegations concern unrelated whistleblower claims about, for example, outdated KYC protocols from 2016 to 2022 for "entities under sanction" and "offshore gambling sites" that have no connection to UPI. Compl. ¶ 33; Mot. 10. Plaintiffs offer no response. As further "detail," Plaintiffs point to a YouTube video purporting to show how someone created a Cash App account using only an email address. Compl. ¶ 31 & n.21; Opp. 9. But that video merely demonstrates an attempt to bypass geolocation restrictions in a country where Cash App is not offered.[2] It has no bearing here as, for example, the resulting "restricted account" shown in the video cannot receive cryptocurrency. ECF 40-2 at 37 (Block's Terms explain that virtual currency services are available in Cash App but only for users with "Virtual Currency Account[s]," which require increased identification verification). That fact alone distinguishes it from Plaintiffs' own allegations, which center on bitcoin transactions. Compl. ¶ 50.

In their Opposition, Plaintiffs also introduce government consent orders for the first time. These documents appear nowhere in the Complaint, making it improper to consider them when evaluating a motion to dismiss. A plaintiff cannot revise their complaint through briefing. *LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.*, 2008 WL 410243, at *5 (N.D. Cal. Feb. 12, 2008) ("In determining whether to grant a motion to dismiss, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss[.]"). Even if considered, these materials are irrelevant to Plaintiffs' claims. The CFPB Consent Order relates to entirely different statutes. ECF 44-3 at 1–2. The New York DFS Consent Order describes conduct occurring between 2018 and 2021, years before the alleged 2024 UPI scam. ECF 44-1, ¶ 13. Plaintiffs emphasize a "backlog of over 169,000 suspicious activity alerts" (Opp. 5), but the Consent Order reflects this backlog ended years ago. There is no allegation or indication that it persisted or played any role in the events here. ECF 44-1, ¶¶ 13-16.[3] The CSBS Consent Order similarly covers pre-2024 activity. ECF 44-2 at 1. And Plaintiffs do not link any of

---

[2] *See* https://www.youtube.com/watch?v=REm_mGLiKNc&t=223s (last accessed May 29, 2025). Block requests the Court consider this YouTube video, which is cited in Plaintiffs' Complaint and referenced again in their Opposition, under the incorporation-by-reference doctrine. Compl. ¶ 31 & n.21; Opp. 9; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1004 (9th Cir. 2018).

[3] "A court may not take judicial notice of one party's opinion of how a matter of public record should be interpreted." *Mendia v. Garcia*, 165 F. Supp. 3d 861, 872 (N.D. Cal. 2016) (citation and alteration omitted).

it to the individuals on Block's platform allegedly working for UPI. These documents—unpled and legally immaterial—do nothing to strengthen Plaintiffs' case. Put simply, Plaintiffs have taken a classic shotgun approach to pleading, grabbing hold to any stray claim about Block and throwing it together instead of tying Plaintiffs' actual injuries to alleged compliance deficiencies; that is nowhere near enough to state a claim.

Plaintiffs' Opposition briefly raises two more theories to support standing. They assert that Block should have adopted stronger security measures in response to "official government warnings," or complied with "minimum due diligence standards." Opp. 10. But they cite no guidance, standard, or fact to support that assertion, and they never connect it to UPI's alleged agents. They also speculate that older accounts may have been "grandfathered" in under outdated verification rules. Yet they do not allege that UPI's agents used such an account, or acknowledge Block's Terms, which establish heightened identification requirements for accounts sending and receiving cryptocurrency. ECF 40-2 at 37. Nor does any case Plaintiffs cite support their approach to traceability. *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), never addresses it. That decision is about whether the plaintiffs adequately alleged an injury. *Id*. at 1059-1100. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038-40 (9th Cir. 2004), concerns federal-question jurisdiction, not standing. *Barber v. Chang*, 151 Cal. App. 4th 1456 (2007), is a state appellate ruling on summary judgment and has no relevance to traceability.[4]

Plaintiffs cite only one case that actually discusses traceability: *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023). There, the court held that a plaintiff plausibly alleged traceability where a state agency flagged his social media post, leading to his account's suspension. *Id*. at 1161–62. Specifically, the Ninth Circuit found it "possible to draw a causal line from the OEC's flagging of the November 12th post to O'Handley's suspension from the platform," including because "Twitter

---

[4] Plaintiffs argue traceability requires something less than proximate causation. Opp. 8-9 & n.5. While Block disagrees with Plaintiffs' understanding of the requirements in general, even if true, Plaintiffs ignore their claims *require* proximate causation. *Tristan v. Bank of Am.*, 2023 WL 4417271, at *15 (C.D. Cal. June 28, 2023) ("To state a claim for negligence, a plaintiff must establish . . . proximate cause[.]"), *appeal dismissed sub nom.* 2025 WL 1293081 (9th Cir. Jan. 21, 2025); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 n.2 (2008), *as modified* (Jan. 28, 2008) (analogizing causation requirement for UCL claims to the causation required for negligence claims). At a minimum, Plaintiffs' claims fail on this basis.

1    had never imposed any disciplinary action against him until the OEC placed his account on the

2    company's radar." *Id*. That level of specificity is precisely what is missing here. *Greenstein v. Noblr*

3    *Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1230–32 (N.D. Cal. 2022) (granting dismissal where

4    plaintiffs failed to trace injury to defendant's conduct). The Complaint never shows how different

5    compliance protocols could have prevented UPI's scam, or otherwise offers factual allegations

6    tracing Plaintiffs' harm to Block. *See BMA*, 2021 WL 949371, at *9. It should be dismissed.

7    **B.    Plaintiffs Cannot Base Their Claims on Violations of the BSA and CMTA.**

8        Even setting aside Plaintiffs' failure to allege that their injuries are fairly traceable to any

9    act or omission by Block, Plaintiffs' claims independently fail for another reason: Plaintiffs seek to

10   recover by grounding their claims on statutory frameworks that do not permit private enforcement.

11   Neither the BSA nor the CMTA creates a private right of action for generalized compliance failures.

12   Mot. 15, 21. Plaintiffs' suggestion that such a right should be implied is squarely contradicted by

13   the statutory text, which unmistakably delegates enforcement authority exclusively to government

14   agencies. 12 U.S.C. § 1958 ("The Secretary [of the Treasury] shall have the responsibility to assure

15   compliance with the requirements of [the BSA]"); *id.* § 1955 (Secretary responsible for assessing

16   civil penalties and bringing "civil action[s] for the recovery thereof"); *id.* § 1954 (Secretary "may

17   in his discretion bring an action . . . to enjoin such acts and practices"); Cal. Fin. Code § 2120 ("The

18   commissioner may at any time [conduct an examination] to ascertain whether th[e] business is

19   being conducted in a lawful manner"); *id.* § 2148 ("the commissioner may direct the licensee to

20   comply with the law"); *id.* § 2151.1 ("The commissioner may assess a civil penalty against a person

21   that violates this division[.]"). That government agencies are meant to be the sole arbiters of this

22   complicated record-keeping and reporting regime is further evidenced by the fact that Block is

23   ***prohibited*** from disclosing suspicious activity reports ("SARs")—or "any information that would

24   reveal the existence of a SAR[.]" 12 C.F.R. § 163.180(d)(12)(i). Block's hands would be tied if this

25   case were to proceed to discovery; it could not defend any decision to file (or not) a report

26   concerning UPI's alleged agents or any other fraudster.[5] The private enforcement Plaintiffs seek

27

28   _____

[5] Plaintiffs' allegations make clear that discovery into suspicious activity reports is inevitable. They
     allege, for example, that common questions of law in this case include whether Block implemented

"undermines the very purposes for which [this] reporting system was created[.]"[6]

Plaintiffs' Opposition cites no authority permitting UCL or negligence claims to proceed based on purported violations of the BSA or CMTA. To the contrary, "courts are unanimous in holding" a defendant's liability under the BSA (and state law equivalents) "is to the . . . government." *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019) (collecting cases); *Pub. Serv. Co. of Oklahoma v. A Plus, Inc.*, 2011 WL 3329181, at *8 (W.D. Okla. Aug. 2, 2011) ("a bank's duty arising under the [BSA] . . . is owed *only* to the government and not to private parties"); *Marlin v. Moody Nat'l Bank*, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006) (holding any obligation under the BSA "is to the government rather than some remote victim"); Mot. 15. Accordingly, courts routinely dismiss consumer claims premised on alleged violations of the BSA and the California Financial Code, which encompasses the CMTA.[7] Plaintiffs offer two theories in an effort to preserve their UCL and negligence claims based on alleged BSA and CMTA violations. Opp. 13, 17–18. Neither holds up.

***First***, Plaintiffs contend that the UCL permits their claims even absent a private right of action in the predicate statutes. Opp. 13. But as Plaintiffs themselves concede, there are exceptions—including that the UCL cannot be used "to circumvent" a "clear legislative directive . . . in favor of administrative enforcement[.]" *Newton v. Am. Debt Servs., Inc.*, 75 F. Supp. 3d 1048, 1058 (N.D. Cal. 2014). Thus, courts have routinely rejected UCL claims based on statutes

---

[6] SAR procedures and whether those procedures complied with industry standards. Compl. ¶¶ 63(a), (b). Plaintiffs also argue "legally compliant suspicious activity reporting" would have flagged activity of Daisy Baez, a purported UPI agent. Opp. 9. By law, Block cannot produce exculpatory (or inculpatory) evidence concerning any of these allegations.

[6] FinCEN, *Unauthorized Disclosure of Suspicious Activity Reports* (Aug. 18, 2004), https://www.fincen.gov/sites/default/files/guidance/unauthorizeddisclosureofbanksar.pdf.

[7] *E.g.*, *Venture*, 2019 WL 3503109, at *6–8 (dismissing negligence per se claim based on alleged non-compliance "with the BSA's customer identification program and customer due diligence requirements"); *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1163–64 (N.D. Cal. 2020) (same); *In re Agape Litig.*, 681 F. Supp. 2d 352, 360-61 (E.D.N.Y. 2010) (same); *A Plus, Inc.*, 2011 WL 3329181, at *8 ("Courts have repeatedly rejected negligence claims based on a bank's duty arising under the [BSA]"); *McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1395-98 (2005) ("no private right of action for violation of the [California] Financial Code"); *Freedom Gold USA LLC v. Bank of Am., N.A.*, 766 F. Supp. 3d 968, 975–76 (C.D. Cal. Jan. 24, 2025) (denying leave to amend because "there is no private cause of action for violation of . . . the California Financial Code); *Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*, 2021 WL 6104014, at *4 (C.D. Cal. Aug. 13, 2021) (CMTA "does not create a private right of action.").

1    like the FTC Act and the CCPA for precisely this reason. *O'Donnell v. Bank of Am., Nat'l Ass'n*,

2    504 F. App'x 566, 568 (9th Cir. 2013) (affirming dismissal because the FTC Act "doesn't create a

3    private right of action, and plaintiffs can't use California law to engineer one"); *Silver v. Stripe Inc.*,

4    2021 WL 3191752, at *7 (N.D. Cal. July 28, 2021) (dismissing UCL claim based on the CCPA).

5        Here, as with the FTC Act and CCPA, both the BSA and CMTA explicitly vest enforcement

6    power in the government. *Compare* 15 U.S.C. § 45(b) (empowering Federal Trade Commission to

7    enforce the FTC Act) *and* Cal. Civ. Code § 1798.199.90(a) (specifying that "civil action" shall be

8    "brought in the name of the people of the State of California by the Attorney General"), *with supra*

9    p. 6 (quoting similar provisions of the BSA and CMTA). Indeed, the BSA's legislative history

10   confirms the legislature's intent to vest enforcement with the Treasury, not private individuals.[8]

11   The same is true for the CMTA, which grants only a narrow private right of action to redress harm

12   not asserted here.[9] Plaintiffs cite no case—because none exists—that allows a UCL claim based on

13   the BSA or CMTA.[10] The Court should reject Plaintiffs' effort to manufacture a private right of

14   action where Congress and the state legislature plainly declined to create one.

15       ***Second***, Plaintiffs attempt to reframe their negligence claim as "negligence per se," arguing

16   that the BSA and CMTA were designed to protect individuals like themselves and thus impose on

17   Block a duty of care. Opp. 16-18.[11] But again, Plaintiffs cite no authority—because none exists—

18   allowing a negligence per se theory under either statute. The courts that have considered such

19

20   [8] S. Hrg. 108-886, *Bank Secrecy Act Enforcement: Hearing on efforts to ensure compliance and enforcement of the bank secrecy act before the S. Comm. on Banking, Housing and Urban Affairs*, 108 Cong. 84, 85 (2004) (statement of Gaston L. Gianni, Jr., Insp. Gen., FDIC) ("The BSA and its underlying regulations give the Treasury Department the authority to assess civil money penalties[.]"); *id.*at 42, 44 (statement of Susan S. Bies, Member, Bd of Governors of the Fed. Res. System) (the Treasury Department "has not delegated the authority to take an enforcement action").

23   [9] The CMTA provides for a limited private right of action where "a customer's instructions as to when the money shall be forwarded or transmitted are not complied with[.]" Cal. Fin. Code § 2102(b). This limited statutory grant is inconsistent with the notion that a broader private right of action also exists. *See Farmers Ins. Exch. v. Super. Ct.*, 137 Cal. App. 4th 842, 853–59 (2006).

25   [10] Plaintiffs' reliance on *Jeong v. Nexo Capital Inc.*, 2022 WL 3590329, at *12 (N.D. Cal. Aug. 22, 2022), is misplaced. Opp. 12. The court analyzed a different provision of the California Financial Code, not the CMTA, and did not analyze whether that provision provided a private right of action or could give rise to a UCL claim. 2022 WL 3590329, at *11-12. *Jeong*'s silence is unpersuasive.

28   [11] Plaintiffs have abandoned two additional duty-of-care theories set forth in the Complaint—that Block owed Plaintiffs a duty to "protect their financial accounts from malicious third parties," as well as "a common law duty to prevent foreseeable harm to others." Compl. ¶¶ 79-80; Mot. 19-20.

claims have uniformly rejected them. *See Venture*, 2019 WL 3503109, at *6-8 (dismissing negligence per se claim; "as there is no private right of action, there can be no duty of care arising out of the BSA's monitoring requirements"); Mot. 15, 21 (citing additional caselaw universally rejecting such claims).

Plaintiffs base their argument on a distorted reading of the BSA's legislative history. They claim that a 2001 amendment broadened the statute's purpose to protect victims of "financial frauds that prey on law-abiding citizens." Opp. 17. Not so. The statutory purpose codified at 31 U.S.C. § 5311 identifies objectives such as assisting government investigations and preventing money laundering—not consumer protection. The legislative excerpts Plaintiffs rely on are misquoted, piecing together unrelated provisions in a manner that alters their meaning.[12] The BSA was not enacted to protect individual consumers from fraud, and courts have uniformly declined to recognize any duty of care running to private parties under its provisions. *Venture*, 2019 WL 3503109, at *7 (collecting cases).

Plaintiffs' CMTA-based negligence theory fails for the same reason. The Complaint merely alleges that the CMTA requires money transmitters to comply with BSA regulations. Compl. ¶ 81(b). Under these circumstances, the CTMA does not impose any independent duty of care. And as with the BSA, courts have dismissed claims based on the California Financial Code due to the absence of a private right of action. *See, e.g., Balboa Cap.*, 2021 WL 6104014, at *2-4; *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 925 (S.D. Cal. 2023) (dismissing negligence per se claim based on alleged violations of the Financial Code), *on reconsideration in part*, 2024 WL 3174380 (S.D. Cal. June 25, 2024). Indeed, "[i]t is well established that banks do

---

[12] Plaintiffs appear to have cherry-picked two separate statements to create the quote relied upon repeatedly in the Opposition: the purpose of the BSA is "to '***prevent, detect, and prosecute . . . financial frauds that prey on law-abiding citizens***.'" Opp. 3, 14, 16, 17 (emphasis added). These words appear in the legislative history but not together and not how Plaintiffs claim. Section 302(b) states a purpose is to "increase the strength of United States measures to ***prevent, detect, and prosecute*** international money laundering and the financing of terrorism." USA Patriot Act, PL 107-56, 115 Stat 272 (2001) (emphasis added). Section 302(a) states as a congressional finding, "jurisdictions outside of the [US] that offer 'offshore' banking and related facilities . . . provide essential tools to disguise ownership and movement of criminal funds, derived from, or used to commit, offenses ranging from narcotics trafficking, terrorism, arms smuggling, and trafficking in human beings, ***to financial frauds that prey on law-abiding citizens***." *Id*. (emphasis added).

not owe their customers a duty to supervise account activity, or to inquire as to why funds are being withdrawn or transferred." *Tristan*, 2023 WL 4417271, at *15.

**Finally**, Plaintiffs argue that California law permits negligence per se theories even where a statute lacks a private right of action. Opp. 17. It does not. "A plaintiff cannot pursue a state cause of action for damages based upon alleged violations of a federal act that does not offer an express or implied private cause of action, and this is true regardless of whether he attempts to frame his claim as a cause of action for negligence." *Casa Nido P'ship v. Kwon*, 2024 WL 5173259, at *17 (N.D. Cal. Dec. 18, 2024) (citation modified).[13]

### C.    Plaintiffs' Complaint Violates Rule 8.

Plaintiffs' Opposition, which largely sidesteps Block's arguments, only underscores the Complaint's failure to clearly and succinctly set out the factual bases for their claims. Mot. 13-14. It is not enough, as Plaintiffs suggest, to identify statutory provisions and then simply assert that Block violated them. Opp. 10. Under Rule 8, Plaintiffs must also show they are "entitled to relief," Fed. R. Civ. P. 8(a)(2), which Plaintiffs fail to do.

For instance, Plaintiffs rely on the BSA's requirement to "maintain[] records of the information used to verify a person's identity." Opp. 10. But Plaintiffs never explain how this record-keeping obligation supports any claim for relief. They merely allege that Block violated the statute because it "has no way to verify the identity of its customers[.]" Compl. ¶ 73. This conclusory assertion is unsupported by any well-pled facts and directly contradicts Block's Terms, which describe identification requirements—including heightened verification for accounts that engage in cryptocurrency transactions, like those allegedly used by UPI's agents. ECF 40-2 at 37.

Plaintiffs also cite 31 C.F.R. § 1022.320, which imposes a duty to report transactions exceeding $2,000 when certain criteria are met—among them, a suspicion that the transaction is to "facilitate criminal activity." Opp. 3. But again, Plaintiffs fail to explain how, if at all, Block violated this provision or how any alleged failure is connected to the purported scam at issue. The Complaint does not assert that the transactions at issue exceeded $2,000, nor does it describe any

---

[13] Plaintiffs cite *Casa Nido* yet fail to acknowledge this holding. Opp. 17-18 & n.11. The rest of Plaintiffs' cited cases are out of District decisions that do not address the BSA and CMTA. *Id.*

characteristics suggesting criminal activity that could have triggered a reporting obligation.

In short, Plaintiffs' allegations are too vague, too general, and too nebulous to satisfy the pleading standard under Rule 8. The deficiencies are only magnified by their class allegations. Plaintiffs seek to represent all users falling victim to a scam, no matter the context or circumstances. Such allegations are "impermissibly vague" and fail even "to provide enough detail to guide discovery." *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *6 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023).

### D.    Plaintiffs' UCL Claim Fails.

As discussed above, Plaintiffs cannot state a UCL claim for two overarching reasons. First, they ignore the statutory standing requirement, which demands "a causal link between the unlawful practice and the loss." *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574 (2020); *see supra* Section II.A. Second, Plaintiffs cannot reframe the BSA and CMTA—two statutes focused on recordkeeping and reporting—as sweeping consumer protection laws, and in any event, neither provides a private right of action. *See supra* Section II.B. Plaintiffs' remaining arguments suffer from the same flaws.[14]

For the same reasons that Plaintiffs cannot establish standing, Plaintiffs' UCL claim fails because they have not—and cannot—allege that Block's "unlawful conduct caused [them] to part with money." *Mayron*, 54 Cal. App. 5th at 575 (affirming dismissal of UCL claim); Mot. 14–15. *Bibicheff v. PayPal, Inc.*, 844 F. App'x 394 (2d Cir. 2021), is instructive. There, the plaintiff sued PayPal after her office manager committed fraud by creating "twelve fake accounts" using her "name, business name, and/or social security number[.]" *Id.* at 395. The plaintiff alleged that "PayPal, in derogation of its own policies and procedures with respect to suspicious and uncharacteristic account activity, failed to investigate [the] fake accounts[.]" *Id.* The Second Circuit affirmed dismissal, finding "no basis . . . to conclude that deceptive practices by PayPal plausibly caused the injury that [plaintiff] suffered." *Id.* at 396. PayPal was not "responsible" for the third-

---

[14] Plaintiffs concede their fraudulent prong claim should be dismissed (Opp. 11 n.7)—and it should be dismissed with prejudice. *Homsy v. Bank of Am., N.A.*, 2013 WL 2422781, at *5 (N.D. Cal. June 3, 2013). Plaintiffs also do not rebut that they fail to plead a UCL unlawful claim based on unnamed "state law equivalents" to the BSA. Mot. 15 n.12. This claim too must be dismissed with prejudice.

party fraud, and "the complaint sets forth no factual allegations to suggest that PayPal would have detected th[e] fraud, even assuming diligent monitoring of the transactions on its platform." *Id.*

The same is true here. Plaintiffs offer no factual allegations to suggest how more robust procedures would have identified the individuals to whom Plaintiffs sent money as suspicious or otherwise prevented the scam. *See supra* Section II.A. And in their Opposition, Plaintiffs do not even attempt to distinguish *Bibicheff*—a clearly relevant authority. Mot. 15, 20. Their failure to allege a causal link between Block's purported compliance failures and the loss they suffered at the hands of third-party fraudsters is itself dispositive of the UCL claim. *See supra* Section II.A.[15]

Plaintiffs' unfair-prong claim fails for an additional reason: it duplicates the unlawful-prong theory. Mot. 17. Plaintiffs assert that two "independent[]" allegations support the unfair-prong claim. Opp. 15. But neither suffices. The first allegation—that Block pressured banking partners— is not independent at all. It is raised in support of the unlawful-prong claim. *See* Compl. ¶ 73. In any event, the claim rests on contested and unrelated whistleblower assertions that predate the UPI scam by years. Mot. 11-12. The second allegation—that Block failed to provide adequate customer service after the alleged scam occurred—is based on the CFPB Consent Order (Opp. 14), which is not cited anywhere in the Complaint and should not be considered now. *See supra* p. 4.

Plaintiffs' arguments under both the balancing and tethering tests fare no better. Under the balancing test, they refer to "the staggering $8.8 billion consumers lost in 2024." Opp. 14. That figure appears nowhere in the Complaint or Opposition with supporting detail. And even if accurate, it presumably reflects a national loss untethered to Block, much less to the UPI scam. Under the tethering test, Plaintiffs again misquote the BSA, claiming it "aims to 'prevent, detect, and prosecute . . . financial frauds that prey on law-abiding citizens.'" *Id.*; *see supra* p. 9. That is not what the BSA says. Plaintiffs' allegations fall short under both tests, providing yet another reason to dismiss the unfair-prong claim. *See Republican Nat'l Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1115 (E.D. Cal. 2024) (dismissing unfair-prong claim where conclusory assertions fell short of establishing "close nexus" between the challenged conduct and public policy).

---

[15] Plaintiffs' suggestion that Block "does not dispute" its alleged non-compliance is wrong. Opp. 12. Block's Motion focuses on the many *legal* failures necessitating dismissal. Should any claims make it past the pleading stage, Block intends to demonstrate the falsity of Plaintiffs' allegations.

### E.    Plaintiffs' Negligence Claim Fails.

As discussed above, Plaintiffs' "negligence per se" theory fails because neither the BSA nor the CMTA provides a private right of action. *See supra* Section II.B. Plaintiffs' attempt to impute a duty of care based solely on these statutes is legally unfounded and should be rejected. *Id.* Even assuming a duty could somehow be inferred—it cannot—Plaintiffs still fail to allege any well-pled facts establishing that Block caused their harm. *See supra* Section II.A. Plaintiffs do not dispute that this causation failure provides an independent basis to dismiss the claim. Mot. 21.

Plaintiffs also misstate the scope of the economic loss doctrine, wrongly asserting it applies only to tort claims that arise out of contractual relationships. Opp. 19 (citing *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 923 (2022)). But *Sheen* itself explains that "[t]he economic loss rule has been applied in various contexts." 12 Cal. 5th at 922. While contractual relationships are one context, they are not the only one. The doctrine also "carries force when courts are concerned about imposing 'liability in an indeterminate amount for an indeterminate time to an indeterminate class.'" *Id.* (quoting *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 414 (2019)).

Courts have consistently enforced the doctrine to bar negligence claims in precisely these circumstances. "Multiple courts have applied the economic loss rule to bar a plaintiff's claim against a bank arising from fraudulent activity." *Meisner v. JPMorgan Chase Bank, N.A.*, 2022 WL 837230, at *6 (E.D. Cal. Mar. 21, 2022) (citation omitted); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016) (dismissing negligence claim based on unauthorized credit card transactions because plaintiff "allege[d] nothing more than pure economic loss"); Mot. 18-19. Plaintiffs' Opposition does not address this body of caselaw or engage with controlling California Supreme Court decisions—*Sheen* and *S. Cal. Gas Leak Cases*—that foreclose their argument.[16]

Nor can Plaintiffs avoid the economic loss doctrine by claiming a "special relationship" with Block. Opp. 21-23. The multifactor test from *Biakanja* and *J'Aire* applies "only when the plaintiff is a 'third person not in privity' with the defendant." *Sheen*, 12 Cal. 5th at 936–37. Here,

---

[16] *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004), is not to the contrary. *Cf.* Opp. 18. It excluded "fraud and intentional misrepresentation claims" from the doctrine, but no such claims are asserted here. *Robinson*, 34 Cal. 4th at 991 n.7; Opp. 11 n.7 (dropping fraud claim).

the Terms govern the relationship between Plaintiffs and Block, so *Biakanja* and *J'Aire* do not apply—Plaintiffs cannot claim a "special relationship." Mot. 19 n.15.

Finally, even if the Court were to apply the "special relationship" test, Plaintiffs still fail to plead an exception to the economic loss rule. Opp. 21-23. The first *J'Aire* factor—"the extent to which the transaction was intended to affect the plaintiff"—is the most important. *Whiteside v. E*TRADE Sec., LLC*, 2021 WL 930794, at *6 (N.D. Cal. Mar. 11, 2021). It requires Plaintiffs to "plead intent particular to them, as opposed to all users of [the Cash App] platform." *Id.*; *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 972 (S.D. Cal. 2014) (first factor weighed against special relationship where defendant did not develop goods and services for plaintiffs' "specific benefit, above and beyond what was offered to all consumers"). Plaintiffs cannot plead that Block intended to benefit them specifically. And that failure "implicates important policy considerations which disfavor recognizing a duty of care"—namely, that "it would create limitless liability and unending litigation." *Whiteside*, 2021 WL 930794, at *6. Recognizing a duty in this case would eliminate any meaningful limit on tort exposure for payment platforms.

The remaining factors—such as the certainty and closeness of the connection between Block's conduct and Plaintiffs' injury—also weigh against finding a special relationship. *See supra* Section II.A; *Whiteside*, 2021 WL 930794, at *7 (finding factors weighed against relationship where "connection alleged between the defendant's conduct and the injury suffered is attenuated").

The economic loss doctrine bars negligence claims where, as here, the only injury alleged is financial. Plaintiffs' attempts to circumvent the doctrine should be rejected.

### F.    Plaintiffs' Unjust Enrichment Claim Fails.

Plaintiffs' unjust enrichment claim fails for multiple reasons. ***First***, it fails because Plaintiffs have an adequate remedy at law. Mot. 22-23. Plaintiffs attempt to avoid this rule by arguing their claim is asserted on behalf of a nationwide class, which includes unnamed class members who did not fall victim to a scam. Opp. 24. But that argument ignores that the Court's analysis must focus on whether ***Plaintiffs***—not unnamed class members—can bring the pled claims. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."). For Plaintiffs,

1    there is no real dispute: they have an adequate remedy at law. That alone warrants dismissal.

2           **Second**, Plaintiffs' unjust enrichment claim is entirely duplicative of their other claims and

3    thus fails for the same reasons. Mot. 22–23 & n.17. *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d

4    753, 762 (9th Cir. 2015), does not dictate otherwise. Nothing in that decision counsels in favor of

5    allowing an unjust enrichment claim based on the same failed theories underlying Plaintiffs' other

6    claims. Moreover, as Plaintiffs note, decisions postdating *Astiana* continue to dismiss "duplicative"

7    unjust enrichment claims. *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2021 WL

8    4306018, at *24 (N.D. Cal. Sept. 22, 2021) (Chesney, J.); *Zeichner v. Nord Sec. Inc.*, 2024 WL

9    4951261, at *8 (N.D. Cal. Dec. 2, 2024) (dismissing claim because plaintiff "could not articulate

10   any other theory . . . that differed from the alleged conduct underlying the UCL claims").

11          **Finally**, Plaintiffs cannot maintain a quasi-contract claim where, as here, they "have an

12   enforceable agreement regarding [the same] subject matter." *Klein v. Chevron U.S.A., Inc.*, 202

13   Cal. App. 4th 1342, 1388 (2012); Mot. 22-23 & n.16. The lone case Plaintiffs cite is in accord.

14   *Sepanossian v. Nat'l Ready Mix Co.*, 97 Cal. App. 5th 192, 207-08 (2023) (dismissing where there

15   was an enforceable agreement and plaintiff already had "an available remedy under [the] UCL").

16   ### III.    CONCLUSION

17          Plaintiffs' claims fail at the threshold because they cannot trace their injuries to any specific

18   conduct by Block. The Complaint relies on vague assertions and post hoc references to consent

19   orders—not mentioned in the Complaint—to suggest Block must be responsible. But standing

20   demands more than speculation. If Plaintiffs were allowed to proceed on such a theory, any

21   individual could file suit on the basis of anonymous allegations in a news story or after disclosure

22   of a compliance issue. That cannot be the law.

23          Even setting aside their failure to allege standing, Plaintiffs cannot pursue claims based on

24   the BSA and CMTA, which do not authorize private enforcement. Plaintiffs' attempt to usurp the

25   enforcement role of federal and state agencies runs directly counter to statutory text and precedent.

26   Allowing this case to proceed would not only expose institutions to limitless liability for third-party

27   fraud but sanction impermissible private enforcement of government-facing laws. For these reasons

28   and those above, the Complaint should be dismissed in its entirety and with prejudice.

1   Dated: June 6, 2025                         COOLEY LLP

2

3                                               By: */s/ Alexandra R. Mayhugh*
                                                     Alexandra R. Mayhugh
4
                                                Attorneys for Defendant
5                                               BLOCK, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28